Mr. Justice Wylie
delivered the opinion of the court:
The bill in this cause was filed by Mr. Corcoran in his own right, and in behalf also of all other holders of bonds such as are hereinafter described, who might desire to become parties to the suit and contribute to the expenses thereof. Subsequently Mr. Stewart was admitted to become one of the complainants. None of the other bondholders have availed themselves of the privilege.
After the suit was brought, the bill was amended more than once, and several stipulations were entered into between the counsel of the respective parties, in consequence of which the issues, originally involved in the controversy, have been reduced to one only, and that one is this: whether the holders of the preferred bonds of the Chesapeake and Ohio Canal Company, and of the overdue coupons annexed to said bonds, are entitled to interest upon those coupons from the dates *363 when they severally became due, payable out of the net revenues of the company, which were pledged for the redemption of said coupons, in the first instance, and for payment of the bonds themselves when they shall ultimately fall due.
In Gelpecke vs. Dubuque, 1 Wall., 206, and Aurora City vs. West, 7 Wall., 105, it was decided by the Supreme Court of the United States that, on general principles, coupons “ should draw interest after payment of the principal is unjustly neglected or refused." Those were actions at law, and in both cases payment of the coupons had been demanded at maturity, and refused. Had the complainants in this suit brought actions at law against the Chesapeake and Ohio Canal Company upon their coupons, and proved presentation thereof at maturity, and failure of the company to pay, it is clear they would have been entitled to a judgment, as well for the interest from date of the demand in each instance, as for the principal.
But it .has so happened that all the property of the company is so heavily incumbered with mortgages or deeds of trust to secure the State of Maryland for money advanced for the construction of the canal, that a judgment at law would be fruitless, whether it were for a large or a small amount. And so these complainants have not chosen to resort to that form of remedy, but instead have resorted to equity to enforce their claim under the specific security which was givea by the company for the payment of their bonds and interest. Now, it is very obvious that the extent of the relief to which they are entitled in this suit must be measured by the extent and character of their security. If they hold a security commensurate with their whole claim — bonds, coupons, and interest upon coupons — they may confidently expect a decree in their favor as extensive as their claim; but, on the other hand, if the security under which they ask relief be only partial, or restricted and limited, then must the decree, to be passed, afford them but partial or restricted and limited relief.
The charter of this company was granted in the first instance by the State of Maryland, then by the State of Virginia, to the extent of her territory made use of by the company, and again by the United States, so far as the District of Columbia was concerned. The State of Maryland, how *364 ever, being most deeply interested in the work, became its most liberal patron, subscribing for a majority of the stock, and making large loans to the company. On the 10th of March, 1845, these loans exceeded $5,000,000, and were secured by mortgage upon all the property, and revenues of the company. The work, however, was not yet completed to Cumberland, and it was estimated that $1,700,000 would be required for that purpose. The legislature on that date passed an act by which the State consented to waive the priority of its own liens in favor of an issue of bonds to be made by the company to the amount of $1,700,000, payable within thirty-five years, with interest at the rate of six per cent, per annum, payable semi-annually. Subject to the mortgage or deed of trust to secure these bonds, with their interest, the State was still to hold its mortgage upon the property and revenues of the company, as before. These bonds and interest were to be secured exclusively upon the accruing net revenues of the canal, and not upon any of its property or franchises. In ascertaining the net revenues, there were to be deducted, first, any sums which might be required to keep the work in repair and pay the salaries and wages of its ofScers and agents ; second, the sum of $5,000 a year to be applied to the payment of a debt due the creditors of old Potomac Company; and, third, the sum of $25,000 a year to create a sinking fund for the ultimate redemption of the bonds themselves at their maturity. After these objects were provided for out of the revenues, the balance, if any existed, was to be applied to payment of the semi-annual interest upon the bonds, as it should fall due. In 1849 the company commenced to issue its bonds under and in pursuance' of this law, with coupons attached, having executed a deed of trust upon its net revenues for their security. Both the bonds and their coupons refer to the act under which they were issued; the former in these words : “ And by the terms of the said act, which has been duly accepted by the stockholders of said company, it is provided and declared that the bonds that may be issued by the said company under the said act to an amount not exceeding, in the aggregate, one million seven hundred thousand dollars, without any preference or priority over each other on account of date, *365 shall be preferred liens on the revenues of said company, according to the provisions of said act, until the said bonds and the interest thereon shall be fully paid.” And on the margin of the coupon are the words: “ Preferred lien on the revenues of the company.” The body of the coupon refers to both the bond to which it is annexed by number, and to the act of the legislature under which it was issued by date and chapter.
It is under this legislation, and this security alone, that complainants have instituted the present suit, aud ask for relief. Their claim is against the net revenues from the canal. But what is to be the result if there be no such revenues? The bill must fail for want of a subject as to which the court could pass a decree. Complainants must themselves not only allege in their bill, but prove, the existence of the revenues, else they can get no relief here. There can be no lien if there be no subject of lien. If the revenue comes into the treasury of the company the bondholders may claim its appropriation to the payment of their coupons. If the revenue fail, the coupons must wait. If it fail without fault of the company, (as the fact must be taken to be for the purposes of this case,) the company is under no obligation to pay, and there is no right on the part of the bondholders to ask for payment. A demand for payment when there are no revenues on hand to meet it, is premature, and properly refused. The coupon, by the very terms of the security given, is payable out of the revenues. If you seek your remedy against the fund, you have no right to claim relief unless the fund has existence. A refusal to pay in that case is not “ unjust,” but is consistent with the very terms of the contract.
In Aurora City vs. West, the court say "that interest on a debt is due from the time that payment is unjustly refused.” Interest, therefore, is not to be allowed where the payment was justly refused. In the present case, the record shows that the company has always been ready and willing to pay the coupons when presented, provided there was “ net revenue” in their treasury, applicable to that purpose.
There is another aspect of this question which we deem worthy of attention. The bond on its face contains the fol *366 lowing provision as to payment of interest: “ Witli interest thereon payable semi-annually on the first day of January and July in each year in the city of Baltimore, on the presentation and delivery of the half-yearly coupons, hereunto annexed.”
Now it is neither alleged in the bill, nor has it been shown by proof in the cause, that any coupon sued upon in this case has ever been refused payment when presented for that purpose by the complainants or either of them. On the contrary it is proved, as well as conceded by stipulation of counsel, that the company has offered to pay these coupons, as well as all others, to the extent of the fund applicable by law, and contract to that purpose, but that complainants have refused to accept such payment and surrender their coupons, unless on payment also of interest from the date when the several coupons fell due, notwithstanding the fact that no demand of payment at those times, or afterward, had been made.
Were this even an action at law, instead of the suit in equity which it is, to enforce a specific lien, that fact would be fatal to the claim for interest; for by the express terms of the contract the interest upon the bond was to be payable only “on the presentation and delivery of the half-yearly coupons ” to the company in the city of Baltimore.
Under the decisions in Gelpecke vs. Dubuque and Aurora City vs. West, coupons bear interest only after payment of the principal has been unjustly neglected or refused. A coupon payable on presentation and demand can bear interest only from the date of ibs maturity and after payment has been demanded and unjustly refused. That principle of law is too clear to need either argument or authority in its support; and we cannot well understand how these complainants could expect to recover interest in this case without having either averred in their bill or proved by evidence that demand of payment had been made when or after they were payable. It is quite comprehensible why the demand of payment was not made in fact. Complainants knew that payment of their coupons could be obtained, if ever, only from the net revenues of the company, and that it was useless to make a demand of payment except when such rev *367 enues existed; and they were aware, also, that to the extent of those revenues they were from time to time receiving payments. The idea of claiming interest upon the coupons sprung up only after the great majority of the coupons had been long overdue, and after the revenues had greatly increased, and probably in consequence of a misunderstanding of the decisions made in the cases referred to.
So far as the present suit is concerned, however, the demand of payment, had it been punctually made on each day when a coupon fell due, would have made no difference as to its result. For the purposes of this case, the coupons were payable only when there was “ net revenue ” in the company’s treasury to meet them; and there is no evidence to show that any one of these coupons has ever been refused payment when that was the case. It is true the company has refused to pay some of these coupons when its revenues were in a condition to pay them; but only because the complainants themselves declined to accept the principal unless the interest were paid along with the principal.
Another question arises out of the consent of the State of Maryland that her earlier liens might be postponed to this one, to the extent, however, only of the principal and interest of the bonds. Her claims are very large, and if ever paid, it must be in a very remote future. In strictness, she has agreed to be postponed only for the principal and interest upon the preferred bonds, not for interest upon interest. And in her situation, we are inclined to the opinion she has a right to insist upon the very letter of the contract. It was so decided by the court of appeals of that State, in the case of The Commonwealth of Virginia vs. The State of Maryland, the Chesapeake and Ohio Canal Company, and William W. Corcoran and others, trustees. In that case Mr. Corcoran was sued, in his capacity as trustee, and although his answer made no reference to this fiduciary character, but, on the contrary, set up that he was the holder of a large amount of the preferred bonds of the company in his own right, and denied that the complainant was entitled to the relief sought, yet as he neither filed a cross-bill in the cause, nor made any claim as such bondholder beyond resistance to the preference of payment claimed by the State of Virginia, we think the *368 decision in that case would not warrant us in pronouncing it to be an absolute estoppel to the claim set up by him in this. Nevertheless, it is a decision made by a high and learned judicial tribunal, and entitled to be received by us with great respect.
These views, we think, dispose of the subject of controversy in the present cause upon the merits; and we deem it unnecessary to advert to any of the numerous points presented by the briefs of counsel relating to parties, and other questions of minor and incidental consequence.
The decree of the court below was as favorable to the complainants as they have any right to claim. It dismissed their bill, but without prejudice to their right to sue at law for the recovery of the interest in dispute; and further ordered that if the complainants should surrender any of said coupons on receiving payment of the same without interest, such surrender should not of itself be deemed an abandonment of their said right, if any such right existed.